UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
JAMES K. BREDAR
UNITED STATES MAGISTRATE JUDGE
MDD_JKBChambers@mdd.uscourts.gov

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-0950 OFFICE
(410) 962-2985 FAX

November 16, 2010

TO ALL COUNSEL OF RECORD

   Subject: *Larry Olen Lowery v. Michael J. Astrue, Comm'r of Social Security*
        Civil Action No.: JKB-09-2254

Dear Counsel:

  On August 27, 2009, the Plaintiff, Larry Olen Lowery, petitioned this Court to review the Social Security Administration's final decision to deny his claim for Supplemental Security Income ("SSI"). (Compl., ECF No. 1.) I have considered the parties' cross-motions for summary judgment. (ECF Nos. 15 & 20.) No hearing is necessary. Local Rule 105.6. This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3). *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). I am affirming the agency's decision, and I am writing this letter to explain my rationale.

## Background

  Mr. Lowery's benefits application was based upon his claim of disability due to depression, emphysema, and arthritis. (Tr. 142-45, 170.) His claim was denied initially and upon reconsideration. (Tr. 96-98, 104-05.) After receiving testimony at an administrative hearing and reviewing the medical evidence, the Administrative Law Judge ("ALJ") found that Plaintiff has the following severe impairments: residual effects, status post right shoulder surgery; hypertrophic degenerative arthritis of the left acromioclavicular joint; mood/depressive disorder; history of polysubstance abuse (including alcohol, marijuana, and sedatives); and mild emphysema or chronic obstructive pulmonary disease with tobacco abuse. (Tr. 12.) However, the ALJ also determined that none of Mr. Lowery's impairments satisfied the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 ("LOI"). (Tr. 12-13.) The ALJ further determined that Plaintiff has the residual functional capacity ("RFC") to perform work at the light exertional level, but he is limited to routine, repetitive tasks in a low-stress environment with occasional public contact, and he should avoid concentrated exposure to environmental irritants such as fumes, dust, odor, or gases. (Tr. 13.) The ALJ concluded that Mr. Lowery has no past relevant work. (Tr. 18.) However, taking into consideration his age, education, work experience, and RFC, the ALJ concluded that jobs that Plaintiff can perform exist in significant numbers in the national economy and that, therefore, he is not disabled. (Tr. 18-19.) The

Appeals Council denied review. (Tr. 1-5.) Afterward, Mr. Lowery filed this suit for judicial review.

Plaintiff asks this Court to grant summary judgment in his favor or to remand for further proceedings. He raises two issues:

1. The ALJ improperly rejected the treating physician's opinion of disability and failed to evaluate Plaintiff's work-related limitations in accordance with the evidence and with the governing regulations; and

2. The ALJ's determination that he can perform light work omits consideration of his functional limitations set out in the record.

(Pl.'s Br. 1-2, ECF No. 15.)

Issue 1:  Treating Physician's Opinion and Evaluation of Work-related Limitations

Mr. Lowery argues that his treating physician, Dr. Nallin, rendered an opinion that should have been given controlling weight by the ALJ. (*Id.* at 12.) Dr. Nallin opined that Plaintiff was permanently and totally disabled. (Tr. 309, 404.) The physician's opinion indicated that Mr. Lowery's perceived disability was based primarily on his psychiatric status, but also that he was unable to perform construction or labor work because of his shoulders. (Tr. 309-10.) A second opinion from Dr. Nallin indicated his opinion was premised on Plaintiff's reported pain in his shoulders, neck, and back, on his clinical findings of "tenderness over the anterior rotator cuff, tenderness over cervical paraspinal muscles, trapezius muscles, [and] lumbarparaspinal muscles," and on the treatments Plaintiff had received, including right shoulder surgery and medications for depression, anxiety, and pain with sedative side effects. (Tr. 403.)

Under governing regulations, the Defendant will give controlling weight to the medical opinion of a treating source if the opinion on the nature and severity of a claimant's impairment "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). However, an individual's ability to work and his residual functional capacity are issues expressly reserved to Defendant. 20 C.F.R. §§ 404.1527(e), 416.927(e). Accordingly, no special significance is to be given to the source of an opinion on such an issue. 20 C.F.R. §§ 404.1527(e)(3), 416.927(e)(3); SSR 96-5p ("treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance"). Even so, "[i]n evaluating the opinions of medical sources on issues reserved to the Commissioner, the adjudicator must apply the applicable factors in 20 CFR 404.1527(d) and 416.927(d)." SSR 96-5p.

Thus, the ALJ is required to evaluate a treating physician's opinion in light of the examining relationship, the treatment relationship (the length of the treatment relationship, the

frequency of examination, and the nature and extent of the treatment relationship), supportability of the opinion by reference to relevant evidence (especially medical signs and laboratory findings), consistency of the opinion with the record as a whole, specialization of the physician in relation to the opinion, and other factors, brought to the ALJ's attention, that tend either to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d), 416.927(d).

The ALJ compared Dr. Nallin's opinion to the other medical evidence and to the consultants' opinions about Mr. Lowery's capacity for work. She noted that a psychiatrist who started treating Plaintiff in January 2008 found that his medications were working adequately. (Tr. 17.) Additionally, a consultative examiner assessed Mr. Lowery as having dysthymic disorder but having the ability to understand and follow simple instructions independently and having thought processes that were logical, focused, and relatively concrete. (Tr. 17.) Also, two state agency consultants found the record evidence established a diagnosis of depressive disorder and polysubstance abuse, but further found Plaintiff was capable of performing simple, unskilled work in the general community with some social accommodations. (Tr. 17.) These consultants determined that he had mild restriction of activities of daily living, moderate difficulty in maintaining social functioning, and moderate difficulty in maintaining concentration, persistence, and pace; they also noted one or two episodes of decompensation. (Tr. 339, 344.) The ALJ noted her agreement with the consultants' findings except as to any episodes of decompensation, for which the ALJ could find no supporting medical evidence. (Tr. 17.)

As for Mr. Lowery's physical capabilities, the ALJ found the medical evidence showed Plaintiff had been diagnosed with chronic obstructive pulmonary disease and moderate persistent asthma as well as mild emphysema. (Tr. 15-16.) He denied having chest pain or shortness of breath except when engaging in "significant activity." (Tr. 16.) The ALJ observed that his continuing use of cigarettes and marijuana suggested this was not a major problem. Even so, the RFC was designed to accommodate this condition. (Tr. 16.) With regard to Plaintiff's musculoskeletal condition, the ALJ found that he had received surgeries on both shoulders, with the right shoulder having the rotator cuff repaired. (Tr. 15-16.) The surgeon's progress notes indicated that, with physical therapy, Mr. Lowery healed well from the surgery and had improved strength; in addition, as of May 2008, he had excellent range of motion, and he reported he was feeling generally well. (Tr. 16.) The ALJ noted that an MRI indicated Plaintiff has a tear of the rotator cuff in his left shoulder. (Tr. 15-16.)[1] Two state agency consulting physicians reviewed the medical evidence and found Mr. Lowery capable of light-duty work with no postural limitations, only manipulative limitations in reaching, and with environmental limitations of avoidance of fumes, dust, odors, gases, and poor ventilation. (Tr. 16.) The ALJ generally endorsed the consulting physicians' limitations, but concluded that the record evidence showing recent improvements in Plaintiff's abilities do not support the manipulative limitations. (Tr. 16-17.) Finally, the ALJ found Mr. Lowery's medications had been reported as "very effective," allowing him to function during the day and sleep at night. (Tr. 16.)

---

[1] Plaintiff testified at the administrative hearing that a similar surgery had been recommended for his left shoulder, but he was only pursuing medication for pain. (Tr. 46.)

All of these findings undermined Plaintiff's claims of disabling pain,[2] in the ALJ's view. (Tr. 14-16.) Dr. Nallin's opinion that Mr. Lowery was permanently and totally disabled was found less than reliable by the ALJ, who noted that it appeared to be based on Plaintiff's subjective complaints, to which she assigned diminished credibility; the ALJ further noted the opinion was inconsistent with the objective medical evidence, recounted *supra*, and with Plaintiff's activities of daily living (Tr. 17), which, the ALJ observed, included attending to his personal care, walking, riding in a car, and shopping (Tr. 14). Lastly, the ALJ perceived inconsistency in Dr. Nallin's assertion of the period of time during which he treated Plaintiff. Dr. Nallin indicated he had seen Plaintiff approximately monthly for most of the time from approximately 1995 until the day before the date of his second opinion on October 8, 2008. (Tr. 403.) The ALJ noted that Dr. Nallin's records were limited to 2007 forward and additionally noted that Plaintiff had been incarcerated for substantial periods of time from 1995 to 2007. (Tr. 18.)

Substantial evidence exists in the record to support the ALJ's findings. Her rejection of Dr. Nallin's opinion as to whether Mr. Lowery is disabled comports with the governing legal standards. Plaintiff further argues that the ALJ's RFC assessment is contrary to the medical evidence and Dr. Nallin's opinion and is based on her exaggeration, mischaracterization, and misstatement of the record, but that assertion is not borne out by my review of the record. The RFC for Mr. Lowery is supported by substantial evidence in the record.

<u>Issue 2: Consideration of Mr. Lowery's Functional Limitations</u>

It is difficult to discern much difference between Plaintiff's second argument and the latter part of his first argument. He seems to contend that the hypothetical question posed to the vocational expert does not include record-supported functional limitations or his educational level. (Pl.'s Br. 17.) I have already found that the RFC employed in this case is supported by the record, and I note that it is consistent with that included in the hypothetical question addressed by the vocational expert at the administrative hearing. (Tr. 80.) Also, the expert was present throughout the hearing and heard Mr. Lowery's testimony to the effect that he had finished seventh grade, that he had taken GED classes in prison, and that he did not take his final GED exam. (Tr. 48, 64.) I can only presume that the expert took that into account when he posited that Plaintiff could perform various jobs, including his two examples, price marker and garment sorter. Mr. Lowery offers no evidence that those jobs are inconsistent with his educational level. His second contention is without merit.

---

[2] Plaintiff testified he had shoulder pain twenty-four hours a day every day at a level of ten on a scale of one to ten. (Tr. 47-48.)

## Conclusion

For the foregoing reasons, the Court will enter a separate order AFFIRMING the agency's decision, DENYING Plaintiff's Motion for Summary Judgment, and GRANTING Defendant's Motion for Summary Judgment.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed accordingly.

Very truly yours,

/s/

James K. Bredar
United States Magistrate Judge

JKB/jh